**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § § § | |
| **v.** | § § | **CAUSE NO. EP:22-CR-00229-KC** |
| **JOHN MICHAEL CONNELLY** | § § § | |

**DEFENDANT'S REPLY TO UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Defendant, John Michael Connelly (hereinafter "Connelly") by and through his attorney of record, and files this, his Reply to United States' Response in Opposition to Defendant's Motion to Dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). The Court should dismiss the Indictment because §922(g)(3) is unconstitutional under the Second Amendment pursuant to the standard announced by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); and by the Fifth Circuit in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) and *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023); and in support thereof would show the Honorable Court as follows:

### I. BACKGROUND[1]

**1.**  On December 28, 2021, law enforcement responded to a call

---

[1] In setting forth the background, Mr. Connelly provides information for this Court regarding the allegations against him. He does not stipulate to the truth or accuracy of this information.

regarding an incident between John Connelly and his neighbor. When officers arrived, they saw John Connelly firing a shotgun at the neighbor's door. Mr. Connelly and his wife were arrested, and their home was searched. Inside the home, officers found several firearms as well as ammunition. They also discovered marijuana and evidence of other drug usage.

2.     On March 2, 2022, a grand jury returned an Indictment, charging Mr. Connelly with possession of a firearm and ammunition by an unlawful user of a controlled substance, and charged his wife and then co-defendant with the same offense. (Doc. #18).

## II. LEGAL STANDARD

3.     Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without trial of the general issue." Fed. R. Crim. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores,* 404 F.3rd 320, 325 (5th Cir. 2005); *see* Fed. R. Crim. P. 12(d)(permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall,* 20 F.3d 1084, 1087 (10th Cir. 1994)("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt.").

Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *Flores,* 404 F.3d at 325.

### III. LEGAL ARGUMENT

**4.** Section 922(g)(3) is unconstitutional as it violates the protections of the Second Amendment as recently explained by the Supreme Court in *Bruen*, 597 U.S. 1 (2022); and the Fifth Circuit in *Rahimi*, 61 F.4th 443 (5th Cir. 2023) and *Daniels*, 77 F.4th 337 (5th Cir. 2023).

**5.** Section 922(g)(3) violates the Second Amendment, facially and as applied, because historical traditions do not support prohibiting persons who are accused of being a "user of a controlled substance" from possessing firearms.

**A. SECTION 922(g)(3) IS UNCONSTITUTIONAL AS APPLIED TO JOHN CONNELLY**

**6.** Section 922(g)(3) is unconstitutional as applied to John Connelly because the gun restriction is not consistent with the nation's historical tradition of firearm regulation. *Daniels*, 77 F.4th 337, 341 (5th Cir. 2023). The Government argues that under *Daniels*, the Defendant's drug use supports disarming him. (Doc. # 130, p. 13). However, the analysis by the Fifth Circuit in *Rahimi* and *Daniels* does not support that assertion.

**7.** As explained by the Fifth Circuit, "[t]hroughout American

3

history, laws have regulated the combination of guns and intoxicating substances. . . But at no point in the 18th or 19th century did the government disarm individuals who used drugs or alcohol at one time from possessing guns at another." *Id*. at 340. While there have been limits on an intoxicated individuals right to carry a weapon, there has been no justification for disarming a sober citizen based on past drug use. *Id.*

**8.** The Fifth Circuit has made clear that "historical gun regulations evince the kind of limits that were well-understood at the time the Second Amendment was ratified, a regulation that is inconsistent with those limits is inconsistent with the Second Amendment. *Daniels*, at 341. As explained in *Daniels*, to determine whether a modern firearms law is unconstitutional, "we now proceed in two steps. *First*, we ask whether the Second Amendment applies by its terms. *Second*, we ask whether a given gun restriction is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.*

**9.** As explained in Defendant's Motion to Dismiss, Connelly is a member of our political community, even as an unlawful drug user. Therefore, he has a presumptive right to bear arms, and by infringing on that right, §922(g)(3) contradicts the plain text of the Second Amendment. *Daniels*, at 342. Connelly was not prohibited from possessing firearms as he was not a felon or mentally ill, he therefore had a presumptive Second Amendment

right. *Id.* at 3.

**10.** Having established that Connelly had a presumptive Second Amendment right, the second step of the analysis shifts to whether history and tradition support §922(g)(3). *Id.* Due to the nature of the regulation and the unlawful drug use, *Daniels* is the most relevant to the analysis of §922(g)(3).

**11.** Similar to the argument by the Government in *Daniels*, the Government in this case has also advanced three analogues: statutes disarming intoxicated individuals, statutes disarming those found to be dangerous and statutes disarming the mentally ill.

**12.** First, the Government argues that §922(g)(3)is constitutional as applied to Connelly because it is consistent with the historical tradition of disarming those presently under the influence. (Doc. #130, p. 13). Similar, to *Daniels*, there is no evidence of Connelly being intoxicated or presently under the influence while possessing firearms. The Government has alleged that Mr. Connelly was a "regular illegal drug user", "that [Connelly's] neighbor admitted that he had done cocaine with [Connelly] approximately three days before the incident", "[Connelly's] wife told officers that the three of them had been smoking crack together the night before the incident", and that "[Connelly] had been using crack and smoking marijuana. (Doc. # 130, p. 15). The Government asserts without any support that

5

these allegations "strongly support an inference that [Connelly] used illegal drugs *while possessing firearms*." *Id.*

**13.** Similar to *Daniels*, Connelly had used illegal drugs but there is no evidence to suggest he was presently under the influence when he was arrested. The Government has not alleged that Connelly was presently under the influence when he was arrested and that is the only historical tradition of firearm regulation that they have advanced.

**14.** Second, the Government argues that §922(g)(3)'s facial constitutionality is justified by historical laws and practices disarming those who pose a threat to the safety of others if armed. (Doc. #130, p. 9). The Government provides various examples to show that Connelly should be viewed as a dangerous drug user, including: Illegal drug users may . . . use firearms to 'commit crime in order to obtain money to buy drugs. . . or to commit 'violent crime' that 'may occur as part o the drug business or culture,'. . . and because of the unlawful nature of their activities, armed drug users are more likely to have dangerous confrontations with law enforcement officers. *Id.* However, there is nothing alleged to substantiate any similarities between Connelly and these examples. There are no allegations that Connelly is a felon or a violent criminal. If Connelly was a felon he would have been charged as a felon in possession of a firearm and there would not have been any

6

constitutional challenge to the indictment. Additionally, it is alleged that Connelly was confronted by law enforcement and was commanded to drop his weapon to which he complied. There is nothing to suggest that as an unlawful user of a controlled substance Connelly was a dangerous drug user at the time of the alleged ofense.

**15.** Finally, the Government argues that illegal drug users, like those with mental illnesses, are likely to experience altered or impaired mental states that affect their judgment and that can lead to irrational or unpredictable behavior. (Doc. #130, p. 11). However, there is also nothing to suggest that Connelly was in any way permanently impaired in a way that is comparable to ongoing mental illness. There is nothing to suggest that Connelly's drug use was so heavy that he was continuously impaired. While Founding-era and Reconstruction-era regulations support a ban on gun possession while an individual is presently under the influence, regulations against citizens like Connelly "based on a pattern of drug use, §922(g)(3) goes further. . . [o]ur History and tradition do not support the leap. *Daniels*, at 348.

**16.** Section 922(g)(3) is unconstitutional as applied to John Connelly because the gun restriction is not consistent with the nation's historical tradition of firearm regulation. The only restriction consistent with this nation's historical tradition of

7

firearm regulation is for an individual presently under the influence, and there is nothing to suggest that Connelly was presently under the influence when he was arrested and no support to substantiate any presumption that he was under the influence based on his pattern of drug use. Connelly was not a violent drug user and his pattern of drug use would not suggest he was continually impaired.

## IV. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, pursuant to *Bruen*, *Rahimi* and *Daniels*, John Connelly respectfully requests that the Court dismiss the indictment.

Respectfully submitted,

**JIM DARNELL, P.C.**
310 N. Mesa, Suite 212
El Paso, Texas 79901
Phone: (915)532-2442
Fax:    (915)532-4549


By: /s/ Jim Darnell
   **Jim Darnell**
   Jdarnell@jdarnell.com
   TX State Bar No. 05391250
   NM State Bar No. 148187

**Attorney for John Connelly**

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 19th day of March, 2024, a true and correct copy of the foregoing document has been electronically filed via the CM/ECF system.

                                        /s/ Jim Darnell
                                        Jim Darnell